UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
IRINA VORONINA, et al.,

                Plaintiffs,


        -against-                                            16-cv-2477 (LAK)


SCORES HOLDING COMPANY, INC., et al.,

                Defendants.
------------------------------------------x

## MEMORANDUM OPINION

Appearances:

> John V. Golaszewski
> ORANS, ELSEN, LUPERT & BROWN LLP
> *Attorneys for Plaintiffs*
>
> Courtney E. Murphy
> CLAUSEN MILLER P.C.
>
> Jeffrey P. Weingart
> Jeffrey A. Kimmel
> Paul J. Rutigliano
> MEISTER SEELIG & FEIN LLP
> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This is an action by fifty professional models and/or actresses. They contend that their images were misappropriated, intentionally altered, and published without their consent by a chain of strip clubs licensed and, in a couple of cases, directly operated by defendants for the

purpose of creating the false impression that plaintiffs either were strippers who worked at, or endorsed, the clubs. The matter is before the Court on defendants' motion to dismiss. They argue that (1) the case should be dismissed because various non-party clubs ("Licensees") are indispensable parties and, in any case, (2) material parts of the complaint should be dismissed for failure to state a claim upon which relief may be granted.

The Court assumes familiarity with the complaint, the well-pleaded factual allegations of which, and all reasonable inferences that might be drawn therefrom, are deemed true for purposes of the Rule 12(b)(6) motion.[1]  It declines to convert the motion into one for summary judgment and so considers Exhibit B to attorney Weingart's declaration only to the extent, if any, that it bears on the Rule 12(b)(7) aspect of defendants' motion.[2]

*The Rule 19 Issue*

   *Defendants and the Licensees*

The defendants' Rule 19 argument turns on the relationships between and among the named defendants and the Licensees.

The defendants in this case are Howard Gans, Scores Holding Company, Inc. ("Scores"), I.M. Operating, LLC ("IM"), and The Executive Club, LLC (the "Club"). According to the complaint, Gans is the majority shareholder or owner of each of the other defendants and, in

---

1  
    *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

2  
    *See* Fed. R. Civ. P. 12(d); *see also Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000) ("In meeting its burden [under Rule 12(b)(7)], the moving party may present, and the court may consider, evidence outside of the pleadings."); *In re Caesars Palace Sec. Litig.*, 360 F. Supp. 366, 395 (S.D.N.Y. 1973).

addition, the chief executive officer of Scores.[3] "Scores . . . advertises itself as the 'fastest growing chain of gentlemen's clubs' in the United States, and as 'leading the adult entertainment industry in innovation.' [I]t licenses the 'Scores' name to various licensees throughout the United States, who then become part of the Scores '"chain'."[4] The "chain" consists of 16 "clubs," two of which—operated by IM and the Club—are in New York and the others in various parts of the country.[5]

*The Alleged Scheme*

The complaint alleges that Scores "and Gans[] create and direct the traditional and social media marketing strategies and policies for all Scores Clubs throughout the United States."[6] They "instituted a corporate policy of misappropriation, alteration, and publication of Images of each Plaintiff for the purpose of promoting the Scores Clubs, and the Scores brand, throughout the United States" which "have been implemented and effectuated by the Scores Clubs throughout the United States, or the Penthouse Club."[7] Scores allegedly "is responsible for the creation, direction, and implementation of the social media campaigns for all of the Scores Club" and the aggressive social media strategy that it touts on its website "consisted of stealing, altering, and publishing the

---

[3] Compl. ¶ 71.

[4] *Id.* ¶ 68 (citation omitted).

[5] *Id.* ¶ 1.

[6] *Id.* ¶ 72.

[7] *Id.* ¶ 3.

4

Images of Plaintiffs, who are professional, world renowned, and extremely well compensated models and/or actresses, and who collectively have tens of millions of social media followers and impressions."[8]

Plaintiffs seek damages and an injunction "permanently enjoining Defendants from using Plaintiffs' Images to promote any of the Scores Clubs, via any medium."[9] And although those of the Licensees whose clubs are outside this district are not defendants, such an injunction would bind the Licensees, pursuant to Rule 65(d)(2), if and to the extent that they had actual notice of any such injunction and were "in active concert or participation" with the defendants or their agents.

*Rule 19 Analysis*

Rule 19 provides for a two-step analysis in determining whether the failure to join a non-party requires dismissal of an action.[10] The first step involves consideration of whether the non-party should be joined if that is feasible. The second turns on whether the action should proceed if the non-party whose presence is desirable in fact cannot be joined.

*Rule 19(a)*

Rule 19(a) embodies the first step in the analysis. It states that a person should be joined where that person is subject to service of process and the joinder of that person would not deprive the court of subject-matter jurisdiction if:

---

[8] *Id.* ¶¶ 5-6.

[9] *Id.* ¶ 11.

[10] *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 356-57 (2d Cir. 2015).

5

> "(A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> "(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> "(i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> "(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[11]

Defendants rely exclusively on Rule 19(a)(1)(B). They contend first that the Licensees claim an interest in the subject matter of the action in that they have used the images in question and that their ability to protect that interest would be impaired because they might be subject to individual suits by virtue of the alleged fact that a judgment in this case would not be *res judicata* against the Licensees.[12] They claim also that the defendants' own interests would be impaired because "the primary allegations stem from alleged acts of the Non-Party Licensees."[13] These contentions are unpersuasive.

      The argument that the Licensees would be prejudiced unless they are joined here because in that case they could be sued elsewhere does not make a great deal of sense in the context of this case. As an initial matter, defendants' argument rests on the premise that the Licensees are not subject to personal jurisdiction here and therefore cannot be joined in this action. If the defendants are right about that, the Licensees would be subject to suit elsewhere regardless of

---

[11] Fed. R. Civ. P. 19(a)(1).

[12] Def. Mem. [DI 18] 7-9.

[13] *Id.* at 8.

6

whether this case proceeds against these defendants. Moreover, if the Licensees' concern with their own uses of the images, past and future, gives them "an interest relating to the subject of the action," and if their ability to protect that interest would be impaired absent their presence here as parties, they would appear to have a right to intervene in this action.[14] So defendants' attempt to obtain dismissal of this action on the basis of the presumed interests of the Licensees fails at the first step—there is no sufficient basis to believe that the Licensees should be joined, assuming that were feasible, in order to protect the Licensees.

Turning to the defendants' putative concerns, the Court sees no real basis for the defendants' insistence that they would be prejudiced in defending this case in the absence of the Licensees. While it is true that the Licensees allegedly have violated plaintiffs' rights, it is not true, as defendants would have it, that plaintiffs' "primary allegations stem from alleged acts of the Non-Party Licensees."[15] It is the defendants who allegedly are at the heart of the wrongs said to have been done to the plaintiffs.[16] In any case, defendants do not even allege that proceeding in the absence of the Licensees would "leave an existing party [*i.e.*, a defendant] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of" the existence of any interest of any of the Licensees, as Rule 19(a)(1)(B)(ii) requires. Finally, the defendants

---

[14] Fed. R. Civ. P. 24(a) (non-party entitled to intervene as of right where "[o]n timely motion, [movant] . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest"); *see, e.g.*, *Patton Boggs LLP v. Chevron Corp.*, No. 12-cv-9176 (LAK), 2016 WL 7156593, at *6 (S.D.N.Y. Dec. 7, 2016).

[15] Def. Mem. [DI 18] at 8.

[16] *See* Compl. ¶¶ 3-7.

would not even be impaired in defending this action by the absence of the Licensees. The Licensees all are subject to discovery under the Federal Rules of Civil Procedure. Defendants do not contend that the Licensees are or may be liable to defendants for any liability defendants may have to plaintiffs. And even if that were the case, they have not shown that they could not implead the Licensees.

Accordingly, the Court holds that defendants have not shown the requirements to Rule 19(a)(1)(B) to be satisfied here. There in consequence is no need to consider whether Rule 19(b) is satisfied. Nevertheless, the Court passes to that question.

*Rule 19(b)*

Rule 19(b) explains that:

"[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

"(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

"(2) the extent to which any prejudice could be lessened or avoided by:

"(A) protective provisions in the judgment;

"(B) shaping the relief; or

"(C) other measures;

"(3) whether a judgment rendered in the person's absence would be adequate; and

"(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

The Supreme Court examined Rule 19(b) in *Provident Tradesmens Bank & Trust Co. v. Patterson:*[17]

> "Rule 19(b) suggests four 'interests' that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled. . . . First, the plaintiff has an interest in having a forum.  Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists. . . . Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. . . . Third, there is the interest of the outsider whom it would have been desirable to join. . . . [A]s Rule 19(a) expresses it, the court must consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' his interest in the subject matter. . . . Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. . . . Rule 19(b) also directs a district court to consider the possibility of shaping relief to accommodate these four interests."[18]

The first two of the *Provident* factors appear to favor plaintiffs.  They certainly have an interest in having a forum, and defendants have not shown that there is an alternative forum in which both the defendants and the Licensees could be joined.  Nor have defendants shown that they would be subject to multiple litigation, inconsistent relief, or sole responsibilty for liability shared with others if this action proceeds.

The third *Provident* factor also appears to favor plaintiffs.  As noted, the Licensees appear to have the ability to intervene in this action if they are moved to do so.  Moreover, a judgment in this action seems likely to resolve the entire controversy without further litigation no matter which side wins.  If plaintiffs prevail, they would be likely to obtain an injunction that, under Rule 65(d)(2), would bind the Licensees to the extent that the Licensees receive actual notice and later act in concert with the defendants.  Moreover, it seems unlikely that (a) Licensees would persist in the alleged present course of conduct if plaintiffs win here or that (b) plaintiffs would pursue

---

[17] 390 U.S. 102 (1968).

[18] *Id.* at 109-11.

individual Licensees following a defeat here, even if they were not foreclosed by principles of former adjudication.

The fourth *Provident* factor favors defendants to the extent that the public interest would favor resolution of the rights of the plaintiffs vis-à-vis both the defendants and the Licensees in a single action. But if defendants are right in asserting that the Licensees cannot be joined here for want of personal jurisdiction over them, then the question may well come down to whether the public interest favors leaving plaintiffs without a remedy (which would be the case if there is no forum in which all can be joined, and defendants have not suggested that there is any such forum) or allowing this case to proceed notwithstanding imperfections. That is not a difficult question. Accordingly, the Court concludes that this action could proceed in the absence of the Licensees even if the Licensees were entities that should be joined were that possible.

*The Rule 12(b)(6) Motion*

The complaint in this case asserts claims under the Lanham Act and on various state law theories. The motion to dismiss is confined to the state law claims and would not be dispositive as to all of them even if it were granted.

*General Business Law ("GBL") Section 349*

Defendants attack the sufficiency of the GBL Section 349 claim on the theories that (a) plaintiffs have not alleged any consumer-oriented injury, (b) plaintiffs lack standing to recover for acts that occurred outside the State of New York, and (c) GBL 349 does not reach trademark infringement claims. These arguments are unpersuasive.

The first of these arguments is inconsistent with the complaint. Paragraphs 296-97

allege:

> "296. Defendants published Plaintiffs' Images on the Clubs' websites and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.
>
> "297. As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Clubs."

The pleading goes on to allege that plaintiffs' reputations were injured by the deception defendants are said to have practiced on the public.[19] But the gravamen of plaintiffs' claim is that they were injured by deception of the public at large as distinguished from deception of the plaintiffs. As defendants have not persuasively addressed the question whether such a claim is legally sufficient, there is not a sufficient basis to dismiss that claim at this juncture.[20]

The Court is in some sympathy with defendants' second argument, which rests on the premise that no claim lies under Section 349 on the basis of acts outside the territorial boundaries of New York. Unfortunately, defendants rely for that assertion entirely on *Goshen v. Mutual Life*

---

[19] *Cf. Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999) (finding that plaintiffs alleged adequately consumer-oriented conduct where defendant's deceptive practices "involved an extensive marketing scheme that had 'a broader impact on consumers at large'").

[20] After years of considerable uncertainty, the New York Court of Appeals earlier this year held that a common law fraud action does not ordinarily lie where the plaintiff claims injury as a result of deception of another person. *Pasternack v. Lab. Corp. of Am.*, 27 N.Y.3d 87 (2016). (Parenthetically, this left unaltered the availability of a fraud claim to a plaintiff who relies to his detriment on a fraudulent misrepresentation by a defendant to an innocent third party that in turn is communicated to the plaintiff provided the defendant acted with the intent that the communication be passed on to the plaintiff. *Amusement Ind., Inc. v. Stern*, No. 07-cv-11586 (LAK), 2016 WL 6820744, at *3 (S.D.N.Y. Nov. 10, 2016).) Whether the state courts would reach the same conclusion with respect to a claim under Gen. Bus. L. § 349 is unclear and has not been addressed by the parties.

*Insurance Co. of New York*,[21] the breadth of which has been called into significant question by *Cruz v. FXDirectDealer, LLC*,[22] and by *Cline v. TouchTunes Music Corp*.[23]  In particular, *Goshen*, as construed by the Second Circuit in *Cruz*, leaves open the possibility of "out-of-state plaintiffs' claims of deceptive acts" where they lead "to transactions within that state,"[24] depending upon "the location of the transaction, *and in particular the strength of New York's connection to the allegedly deceptive transaction*, rather than 'on the residency of the parties.'"[25]  As the complaint alleges strong New York connections to the alleged out-of-state deceptive acts, and as discovery may yield more evidence probative of such connections, it likewise is premature to dismiss this claim on defendants' second proposed theory.

Finally, even assuming *arguendo* that trademark infringement cases fall outside the scope of Section 349, as defendants claim, there is more to this case than trademark infringement. Accordingly, their third theory fails as well.

*The Civil Rights Law Claim*

Plaintiffs' second claim alleges liability on the basis of violations of Sections 50 and

---

[21] 98 N.Y.2d 314 (2002).

[22] 720 F.3d 115 (2d Cir. 2013).

[23] __ F. Supp. 3d __, No. 14-cv-4744 (LAK), 2016 WL 5478432, at *1-*3 (S.D.N.Y. Sept. 29, 2016).

[24] *Cruz*, 720 F.3d at 122 (quoting *Goshen*, 98 N.Y.2d at 325) (internal quotation marks omitted)).

[25] *Cruz*, 720 F.3d at 122 (emphasis added).

51 of the Civil Rights Law, which render unlawful unconsented-to commercial use of the picture or license of another. Defendants maintain that at least some of the alleged violations (a) occurred more than a year before commencement of the action and therefore are barred by the statute of limitations and/or (b) involved publications outside the state and therefore are outside the ambit of the statutes.[26]

As to defendants' first argument, plaintiffs for their part acknowledge that the statute of limitations may have run with respect to some images. But the statute of limitations is an affirmative defense that ordinarily must be raised in the answer.[27] It is properly raised on a Rule 12(b)(6) motion only where the defect as to timeliness appears on the face of the complaint.[28] Here, however, defendants' motion in this respect proceeds from the fact that many of the images attached to the complaint are time stamped with dates more than a year prior to the filing of the complaint. But the complaint does not even begin to exclude the possibility that the dates that appear to have been stamped on some or all of those images are wrong for any of a host of reasons. Accordingly, the limitations argument cannot prevail on a motion to dismiss.

Defendants' second argument with respect to the Civil Rights Law claim rests on the premise that "[a] successful right of privacy claim must demonstrate," *inter alia*, "use of plaintiff's

---

[26] Def. Mem. [DI 18] at 18-20.

[27] *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*, 150 F. Supp. 2d 566, 572 (S.D.N.Y. 2001).

[28] *E.g.*, *Ellul v. Congreg. of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

name, portrait, picture or voice . . . within the state of New York."[29] They contend that 107 of the images attached to the complaint were published by clubs outside of New York and therefore cannot give rise to a claim under Sections 50 and 51.

As an initial matter, in ruling on a Rule 12(b)(6) motion, the Court is confined to the face of the complaint and materials incorporated therein by reference.[30] The complaint does not unequivocally establish that any of the images was published only outside of the State of New York.

In any case, the complaint makes abundantly clear that all of the images were posted on the Internet and available over social media. Given their ubiquitous availability in the State of New York, the Court will not dismiss the plaintiffs' Civil Rights Law claim, in whole or in part, at this juncture.[31]

---

[29] Def. Mem. [DI 18] at 19 (quoting *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 348 (S.D.N.Y. 2002) (internal quotation marks omitted)).

[30] To the extent additional material was submitted in support of the motion, the Court excludes it from consideration and declines to convert the motion into one for summary judgment. *See supra* notes 1-2.

[31] As the Appellate Division wrote in *Molina v. Phoenix Sound Inc.*, 297 A.D.2d 595, 598, 747 N.Y.S.2d 247, 230 (1st Dep't 2002):

"Today, it cannot be disputed that an Internet Web site simultaneously exhibits images both globally and locally. Therefore, while plaintiff's image on the Sound Factory Web site was indeed available for use on a 'world wide basis,' it necessarily was concurrently available within New York State. Moreover, any person with a computer and an Internet connection, anywhere, has access to a Web site, regardless of where the site itself was created or is maintained. We therefore find that, for the purposes of a motion to dismiss, plaintiff's assertion of a Web site's global accessibility sufficiently meets the required statutory element of use within New York State." (citations omitted).

In the absence of a persuasive reason to believe that the New York Court of Appeals would reach a different result, and in the absence of any contrary Appellate Division ruling, this Court is bound to follow the First Department's ruling on this issue of state law. *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (judgment of intermediate appellate state court "is a datum for ascertaining state law which is not to be disregarded by a federal

14

Finally, the same rationale that led the Second Circuit in *Cruz* to call into question *Goshen*'s apparently strict reading of the territorial limits of GBL Section 349 suggests that the territorial scope of the Civil Rights Law perhaps is not as narrow as defendants would have it.

*The Defamation Claim*

Plaintiffs' fourth claim for relief asserts that defendants defamed them on the theory that "[d]efendants['] publication of said Images constitutes a [false] representation that Plaintiffs w[ere] either employed by one or more of the Clubs, that they endorsed one or more of the Clubs, or that they had some affiliation with one or more of the Clubs," and those representations created the false impression in the minds of "the general public that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs."[32] Defendants argue that the alleged publications were not defamatory *per se* because reference to extrinsic facts is necessary in order to understand the allegedly defamatory meaning. Accordingly, they contend, this claim must be dismissed for want of any allegation of special damages.

As this Court has written:

"A writing which is libelous *per se* is one 'whose defamatory meaning is apparent

---

court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise" (internal quotation marks omitted) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940))). Defendants' reliance on *Pearce v. Manhattan Ensemble Theater, Inc.*, No. 06-cv-1535 (KMW), 2009 WL 3152127 (S.D.N.Y. Sept. 30, 2009), and *Cuccioli*,150 F. Supp. 2d 566, is misplaced. *Cuccioli* antedated *Molina*. And while *Pearce* post-dated it, it neither dealt with the question presented here—ubiquitous availability in New York over the Internet and social media—nor acknowledged the First Department's holding in *Molina* on what is after all a state law question. Furthermore, *Pearce* was decided on a motion for summary judgment whereas *Molina* involved a motion to dismiss (like the present case).

[32] Compl. ¶¶ 304, 306.

15

on the face of the communication' and is actionable without proof of special damages.  If the statement is not libelous on its face, but is susceptible of a defamatory meaning in light of extrinsic facts known by the recipient, it nevertheless is actionable, but perhaps only with proof of special damages.  The distinction might be illustrated, for example, by an ordinary wedding announcement in a newspaper, ordinarily an occasion for celebration, but quite defamatory if the reported bride and groom each were married to other mates.  This latter category of libel—libel by extrinsic fact—often is called libel *per quod*, although the use of the terminology arguably is more confusing tha[n] helpful."[33]

In this case, the alleged libel was that plaintiffs were "employed by one or more of the Clubs, that they endorsed one or more of the Clubs, or that they had some affiliation with one or more of the Clubs."  There is nothing defamatory in and of itself in that implication.  The defamatory "sting" for the most part depends upon the recipient of the allegedly defamatory statement or implication having facts extrinsic to the alleged libel—namely, that those who were employed by the clubs were strippers working there.  So the most important part of the alleged libel at best is libel by extrinsic facts.

There remain, to be sure, the implications that plaintiffs were employed by or endorsed one or more of the Clubs.  On the basis of the allegations of the complaint, however, it is not possible to conclude that such implications, in and of themselves, could convey a defamatory meaning absent other facts extrinsic to the alleged libel—facts concerning the nature of the business of the clubs and of the types of persons employed by or who endorse them.

While the Court does not exclude the possibility that plaintiffs might be able to state a legally sufficient libel claim, they have not done so to date.

---

[33] *Protic v. Dengler*, 46 F. Supp. 2d 277, 280 (S.D.N.Y. 1999) (footnotes omitted).

16

*Other Claims*

Defendants move also to dismiss the fifth through eighth claims for relief on the grounds that they are preempted by Civil Rights Law Sections 50 and 51. Without conceding the point, plaintiffs no longer press these claims.[34] The motion to dismiss to that extent is moot.

*Conclusion*

Defendants' motion to dismiss the complaint [DI 17] is granted to the extent that the fourth through the eighth claims for relief are dismissed, the fourth claim without prejudice to the filing, on or before January 19, 2017, of an amended complaint amending only that claim. It is denied in all other respects.

SO ORDERED.

Dated:   January 5, 2016

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[34] Pls. Mem. [DI 23] at 23.